DE HARO (UNITED STATES v.). See Cases Nos. 14,937–14,941.

DE HAVEN (TOWN v.). See Case No. 14,113.

DE HERRERA v. The ACME. See Case No. 27.

DEKLYNE (WRIGHT v.). See Case No. 18,076.

DELAFIELD (SANDS v.). See Case No. 12,304.

---

## Case No. 3,749.

### DELANCEY v. M'KEEN.

[1 Wash. C. C. 354.] [1]

Circuit Court, D. Pennsylvania. April Term, 1806.

LANDS FORFEITED BY ATTAINDER — RIGHTS OF MARRIED WOMEN — ATTAINDER OF HUSBAND—POSSESSION AS EVIDENCE OF OWNERSHIP — LIMITATIONS—RECORDING OF DEEDS.

1. If an equitable estate has been forfeited under the attainder laws, the legal estate will not be allowed to be set up, to bar a fair purchaser of the equitable interest.

2. Mere possession of land, or offering to sell it, or even partial sales actually made, are not, alone, sufficient to authorize a presumption of ownership; for these may be the acts of a tortious possessor, or of an agent.

3. The payment of part of the purchase money of land, the property of a feme covert, in her presence, cannot prejudice her right to claim the land, after the termination of the coverture.

4. The title of a feme covert to land, cannot be affected by acts of commission, short of those required by law to bind her; much less, by acts of omission. Even, if by any acts during coverture, other than those which by the provisions of law may clearly bind her, a feme covert may have bound herself, they are proper for the decision of a court of equity, and not of law.

5. In order to protect the rights of a feme covert, in property forfeited as belonging to her husband, on his attainder, it is not necessary that the husband should put in a claim to the same, for her; as, by the supplement to the attainder laws of Pennsylvania, passed 29th March, 1779, the rights of persons claiming paramount to the attainder, are saved.

6. Where a party has been absent from the country during a war, the period of the war should not be construed against him, in computing the length of time in which an ejectment can be brought.

7. A deed, acknowledged before a judge of the supreme court, and recorded in one county, may not require to be recorded in every county in which the lands conveyed by it, were supposed to be situated.

Ejectment, to recover 100 acres of land, in Northampton county. The plaintiff deduced a regular title from the proprietary to William

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

Allen, for 1853 acres of land; and read the copy of a deed from William Allen, in 1771, to James Delancey, and the plaintiff his wife, in fee, for 1000 acres, part of the above 1853 acres; of which 1000 acres, the land in question, are parcel. The deed from William Allen, was acknowledged in 1773, before a justice of the supreme court of Pennsylvania, and was recorded in the county of Philadelphia. The deed produced, was an exemplification from the register's office of that county. The plaintiff survived her husband. The above deed contained a grant of lands lying in the county of Philadelphia, and of lots in the city of Philadelphia, as well as of the above 1000 acres. The defendant set up a title, under a deed from the commissioners of forfeited estates, who sold the same as part of the estate of Andrew Allen, a son of William Allen, and brother of the plaintiff, who was regularly attainted; his estates were sold in September, 1778, and the deed executed in 1779. It was contended, that, from certain acts of ownership, exercised over the land of Delancey and wife, by Andrew Allen, there was ground to presume, that he had purchased the 1000 acres from them; but no evidence of such a deed, or of any contract for the sale of it, was offered. Evidence was given, that in 1775, Andrew Allen, entered into contracts for the sale of parcels of this land; that he offered the whole 1853 acres for sale, and that he received the consideration money for such parcels, as he had sold. That these payments were made, sometimes to himself, sometimes to William Allen for his use; and that at one time, Mrs. Delancey, the plaintiff, was in the room, when a sum for a part of the land was paid by the purchaser. It appeared in evidence, that James Delancey left the United States in the fall or winter of 1775; that he passed first into Canada, from whence he went to England, where he always afterwards lived, until the year 1799 or 1800, when he died. That Mrs. Delancey went to England early in 1799. That in 1788, Mr. Delancey brought an ejectment for the land in question, and a verdict and judgment was given against him. The defendant offered in evidence, a claim put in by Wilson, (who purchased from Andrew Allen part of the 1853 acres,) in the supreme court, to so much of the land of Andrew Allen, which had been confiscated, as he had purchased, which was allowed.

BY THE COURT. This is nothing more than an attempt, in this suit, to give evidence of a judgment rendered in a case between different parties, for a different piece of land, and different title. The evidence was refused.

Mr. M'Kean and Mr. Dallas relied, that the acts of ownership, exercised by Andrew Allen, were sufficiently proved; and that upon such a case as this, the jury might presume a conveyance from Delancey and wife, to Andrew Allen, or at any rate, an agreement to sell,

which would be sufficient to pass an equitable estate to Andrew Allen; upon which, as well as upon legal estates, the act of confiscation operated. Upon this point, they read 1 Eq. Cas. Abr. 305,306; Skin. 77; Cowp. 108; 9 Mod. 37. The objection to the plaintiff's title: 1st. That the exemplification of the deed, from William Allen to Delancey and wife, was not evidence, since it was not acknowledged or proved before a justice of peace, in the county where the lands lie, or recorded in that county. That this point was to be determined under the act of 1715, which establishes in each county an office of record, for recording deeds, and declares "that all deeds, for lands in this province, may be recorded in said office, the same being proved by two of the witnesses present at the execution, or acknowledged before one of the justices of the peace of the proper county, or city, where the lands lie." Though the words of the second section are general, yet it will appear, by the whole law taken together, that the deed must be recorded in the county where the lands lie. The fourth section provides for the proving deeds, made out of the province, and says; that they, being certified in the manner mentioned in this section, and recorded in the county where the lands lie, shall be as valid, as if the same had been made, acknowledged, or proved, in the proper county where the lands lie. The fifth section declares that all deeds made, and proved or acknowledged, and recorded as aforesaid, shall have the same force, for giving possession and seisin, and making title, as deeds of feoffment with livery, or deeds enrolled in England, are there; and that copies or exemplifications of deeds, so enrolled and certified, under the seal of the proper officer, shall be allowed, in all courts, as good evidence, and as valid as the originals. The 8th section declares, "that no deed or mortgage, or defeasible deed in the nature of mortgage, shall be good to pass any freehold, or interest, for life, or years; unless the same be acknowledged, or proved and recorded, within six months after the date thereof, where such lands lie, as herein before directed for other deeds." Secondly. It was contended, that under the 14th section of the confiscation act (2 Carey & B. Ed. c. 773, p. 173), the plaintiff and her husband were bound by the attainder, confiscation, and sale of Andrew Allen's land; as they did not interpose their claim before the justices of the supreme court, within the time mentioned in that law.

The plaintiff's counsel insisted, that to open the door for a presumption of a deed to Andrew Allen, some proof should first be given, that there was a deed (1 P. Wms. 652); and that, at any rate, there was not the slightest ground of presumption in this case. That, if the jury presumed any thing, they must presume a deed from Delancey and wife, and her privy examination regularly taken under the act of 1770. That it was not enough to presume a contract for a sale, which could

only pass an equitable estate, which would not be a title to be noticed in this court. As to the copy of the deed from William Allen to Delancey, it was the universal understanding in this state, that all deeds made before the year 1775,[2] (when another law was passed on the subject,) might be proved before a justice of the supreme court, who is considered as a justice of peace in every county, and might be recorded in any county in the state. That as to the 8th section, it had lately been determined in the supreme court, that it was to be construed to extend only to mortgages, or deeds in nature thereof. As to the necessity of a claim, the supplement passed 29th March, 1779, to the act which has been read, saves the rights of all persons claiming, paramount to the person attainted, as was determined in this court, in the case of Hylton v. Brown [Case No. 6,980], and in Gordon's Cases [Cases Nos. 5,610, 5,-611].

Lewis and Tilghman, for plaintiff.
M'Kean and Dallas, for defendant.

WASHINGTON, Circuit Justice. The single question is, whether a conveyance of the land, to which Delancey and wife were entitled, under the deed from William Allen to them, was made by Delancey and wife, to him, any time, prior to the attainder of Andrew Allen? If such conveyance was made, then the title of the defendant is unquestionable; since no person will doubt the power of this state to attaint Andrew Allen, and to confiscate his property, and none have been suggested, as to the regularity of the proceedings against him, and of the sales which took place under them. If, on the other hand, no such conveyance was made, then the confiscation is out of the question, and the plaintiff must recover, if his evidence is regular; because, having shown an undisputed title to the land sued for, no objection is pretended, except that the land was sold to those, under whom defendant claims, as part of the confiscated lands of Andrew Allen. But, if Andrew Al-

[2] This law directs, that all deeds executed in this state, of lands here, shall be acknowledged or proved by one or more of the subscribing witnesses, before one of the judges of the supreme court, or one of the justices of the common pleas of the county where the lands lie, and recorded in the office for recording deeds in the county where the lands lie, within six months after they are executed; and, if not proved and recorded as aforesaid, they are void against any subsequent purchaser or mortgagee, for a valuable consideration—unless they be recorded as aforesaid, before the proving and recording the deed under which such subsequent purchaser or mortgagee shall claim. If made out of this state, and acknowledged; or proved, as directed by former laws; or proved by one or more of the subscribing witnesses, before any supreme judge of this state, they shall be recorded in the office in the county where the land lies, within twelve months from the execution.—Note, this law, as well as that of 1715, in this last case, does not mention the acknowledgment of the grantor.

len had no title to the land, previous to his attainder, the confiscation of his property, because of his offences, could not affect an innocent person, and thus deprive Mr. and Mrs. Delancey of their land; who, claiming paramount to the attainder, were not bound to interpose a claim, in order to save their rights.

In support of the defendant's pretensions, that the land in question was conveyed, by Delancey and wife, to Andrew Allen, no deed, no contract of any kind, no receipt for any part of the consideration money, have been produced; and no witness examined, to prove that he ever saw, or heard, that any such existed. In this situation, without having any ground to stand upon, you are called upon to presume such a conveyance; that is, a deed executed by Delancey and wife, made valid by the privy examination and consent of the plaintiff. Cases sometimes occur, where certain things necessary to the perfection of a deed, or even a deed itself, may be presumed. Where a feoffment has been made, or a copyhold disposed of; livery of seisin, and a surrender, after long and quiet possession, may be presumed. So, too, if a man continues for a great length of time to enjoy land, and to treat it as his own, to the knowledge, and with the apparent approbation of the true owner, he knowing of his rights; I am inclined to think, that a deed or contract for a sale, might be presumed, if a proper foundation is first laid, on which to build the presumption. But, in all such cases, the acts of ownership, thus exercised, should not be of an equivocal nature, and should be with the full knowledge of the supposed grantor. The mere possession and receiving of the profits, or offers to sell, or partial sales actually made, may as well be the acts of a tortious possessor, or of an agent, as of one claiming title under the real owner. Consider what would be the consequences of a doctrine more relaxed than that just laid down. A man living here, and owning lands at a distance, might, after some years, find them in possession of another; and the demand of restitution would be met by this novel, extravagant, and pernicious doctrine, that the claimant had sold and conveyed his right to him in possession. No deed, contract, receipt for money, or testimony, that any, or either of those evidences of title ever existed, would be produced; but, he would rely upon a tortious possession, short of the limitation, which by law may give a right, as evidence of a conveyance. Of what consequence is it, that men should, in the transfer of real estates, require regular conveyances, executed with all due solemnities, or that they should so cautiously endeavour to preserve these muniments of title; if all may be prostrated by the destroying and pernicious doctrine, which we have heard maintained in this cause.

What, then, is the present case? Delancey and wife, being the acknowledged owners of the land in question, (provided the copy of the deed to them should be determined to be proper to be given in evidence,) lived in the province of New-York. In 1775, the equivocal acts of ownership, exercised over this land by Andrew Allen, took place. It does not appear, that they were ever communicated to, or known by Delancey, or even by his wife. In the autumn or winter of the same year, he left the United States, passed into Canada, from whence he went to England, and never again returned to this country. The war commenced before his departure, and continued until 1783; and, in 1788, as soon as it is probable he could obtain information of his affairs in this country, he brought an ejectment for the land in dispute, which failed. The acts of ownership by Andrew Allen, set up as a title for the defendant, prove nothing against the plaintiff; and, as to a long and quiet possession, what was it? I should reject the whole period of the war in the computation of time, as applying to a case of presumption, where one of the parties was beyond sea; and, of course, there was not a quiet possession for more than five or six years. But, what has all this to do with the lessor of the plaintiff, who laboured under two disabilities, coverture, and absence beyond seas, until the year 1780, or 1781, when the joint estate vested in her by survivorship? It is said, that Mrs. Delancey was present, when part of the purchase money was paid, for a parcel of the land; and, on this ground, it is contended, that her silence ought to postpone her to a fair, bona fide, purchaser. To this, there are three answers: First, that, being a feme covert, she could not bind herself by acts of commission, short of those directed by law to bind her, much less by acts of omission; second, that it does not appear, she knew on what account the money was paid; and, third, that, if all these points were against her, the principle contended for is inapplicable to matters of title, in a court of common law.

As to the point made, that Delancey and wife should have put in their claim, it is sufficient to answer; that, the rights of persons claiming paramount to the attainder, are saved by the supplement to the act. Whether the copy of William Penn's deed, ought to have been read in evidence, is a question of considerable difficulty. I am satisfied, that, under the true construction of the act of 1715, the recording of a deed in the county in which the land lies, is not necessary to its validity; and, I am also clear, that the eighth section only extends to mortgages, or deeds in nature thereof. The latter words prove this; for all the first mentioned deeds are directed to be recorded where the lands lie, as herein before directed for other deeds; which would be nonsense, if the word deeds, in the first part of the

section, meant all deeds. But, whether a copy of a deed, from an office where it was recorded, different from that in which the lands lie, can be offered in evidence, is another question. There is no adjudged case. The counsel concerned, are equally positive, on both sides, as to the practice and general understanding. Three gentlemen of the bar, not concerned, say, they have always understood, that the deed must be proved, in the county in which the lands lie. Under these circumstances, I must recommend to the jury to find, subject to the opinion of the court, upon this question.

The jury found for the plaintiff, subject to the opinion of the court, whether the exemplification of the above deed could be read in evidence.

[NOTE. At the October term, 1806, it was decided that the deed was properly admitted in evidence—Case No. 3,750; and this decision was subsequently affirmed by the supreme court of the United States.—McKeen v. Delancey, 5 Cranch (9 U. S.) 22.]